## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANET WHALEY and LESLIE BEIDLEMAN, individually, and on behalf of all others similarly situated, and on behalf of the Mercy Health Plans, | Case No. 1:16-cv-518 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| MERCY HEALTH, an Ohio Non-Profit Corporation, JOHN and JANE DOES 1-20, MEMBERS OF THE MERCY HEALTH RETIREMENT PLAN COMMITTEE, each an individual, and JOHN and JANE DOES 21-40, each an individual, | **CLAIM OF UNCONSTITUTIONALITY** |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 4

II.    JURISDICTION AND VENUE ........................................................................... 7

III.    PARTIES ............................................................................................................ 8

    A.    Plaintiffs ................................................................................................. 8

    B.    Defendants .............................................................................................. 9

IV.    THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ............................. 10

    A.    The Adoption of ERISA .......................................................................... 10

    B.    The Scope of the Church Plan Exemption in 1974 ............................... 11

    C.    The Changes to the Church Plan Exemption in 1980 ........................... 12

V.    MERCY HEALTH ............................................................................................ 16

    A.    Mercy Health's Operations .................................................................... 16

    B.    The Mercy Health Plans ........................................................................ 19

        1.    The Mercy Health Plans Meet the Definition of ERISA Defined Benefit Plans .......................................................... 20

        2.    The Defendants Meet the Definition of ERISA Fiduciaries ................. 20

            a.    Nature of Fiduciary Status ......................................................... 20

            b.    Defendants Are Each ERISA Fiduciaries ................................. 22

        3.    The Mercy Health Plans Are Not Church Plans ................................... 24

            a.    Only Two Types of Plans May Qualify as Church Plans and the Mercy Health Plans are Neither ......................... 24

            b.    Even if the Mercy Health Plans Could Otherwise Qualify as Church Plans under ERISA §§ 3(33)(A) or (C)(i), they are Excluded From Church Plan Status under ERISA § 3(33)(B)(ii) ........................................... 30

            c.    Even if the Mercy Health Plans Could Otherwise Qualify as Church Plans under ERISA, the Church

Plan Exemption, as Claimed By Mercy Health, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective ................................................................ 31

VI.    CLASS ALLEGATIONS ................................................................ 32

    A.    Numerosity ................................................................ 32

    B.    Commonality ................................................................ 32

    C.    Typicality ................................................................ 33

    D.    Adequacy ................................................................ 33

    E.    Rule 23(b)(1) Requirements ................................................................ 34

    F.    Rule 23(b)(2) Requirements ................................................................ 34

    G.    Rule 23(b)(3) Requirements ................................................................ 34

VII.    CAUSES OF ACTION ................................................................ 35

    COUNT I ................................................................ 35

    (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against All Defendants) ................................................................ 35

    COUNT II ................................................................ 37

    (Claim for Violation of Reporting and Disclosure Provisions Against Defendant Mercy Health) ................................................................ 37

    1.    Summary Plan Descriptions ................................................................ 37

    2.    Annual Reports ................................................................ 37

    3.    Summary Annual Reports ................................................................ 38

    4.    Notification of Failure to Meet Minimum Funding ................................................................ 38

    5.    Funding Notices ................................................................ 39

    6.    Pension Benefit Statements ................................................................ 39

COUNT III ................................................................................................................ 40

    (Claim for Failure to Provide Minimum Funding Against
    Defendant Mercy Health) ..................................................................... 40

COUNT IV ............................................................................................................... 40

    (Claim for Failure to Establish the Plans Pursuant to Written
    Instruments Meeting the Requirements of ERISA § 402
    Against Defendant Mercy Health) ......................................................... 40

COUNT V ................................................................................................................. 41

    (Claim for Failure to Establish a Trust Meeting the Requirements
    of ERISA § 403 Against Defendant Mercy Health).............................. 41

COUNT VI ............................................................................................................... 42

    (Claim for Clarification of Future Benefits Under ERISA §§
    502(a)(1)(B) and 502(a)(3) Against Defendant Mercy
    Health) ................................................................................................. 42

COUNT VII .............................................................................................................. 42

    (Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
    Against Defendant Mercy Health) ......................................................... 42

COUNT VIII ............................................................................................................. 44

    (Claim for Breach of Fiduciary Duty Against All Defendants) ........................ 44

        1.    Breach of the Duty of Prudence and Loyalty......................................... 44

        2.    Prohibited Transactions ........................................................................ 45

        3.    Failure to Monitor Fiduciaries ............................................................. 46

        4.    Co-Fiduciary Liability .......................................................................... 48

COUNT IX ............................................................................................................... 50

    (Claim for Declaratory Relief That the Church Plan Exemption
    Violates the Establishment Clause of the First Amendment
    of the Constitution, and Is Therefore Void and Ineffective)................. 50

VIII.    PRAYER FOR RELIEF ................................................................................. 53

Plaintiffs Janet Whaley and Leslie Beidleman, individually and on behalf of all those similarly situated, as well as on behalf of the Mercy Plans, as defined herein, by and through their attorneys, hereby allege as follows:

## I.  INTRODUCTION

1.  Defendant Mercy Health, formerly Catholic Health Partners, by and through its subsidiaries and/or affiliates ("Mercy Health" or "Defendant"), operates a hospital conglomerate in Ohio and Kentucky and provides healthcare and health-related services in the communities it serves.  This case concerns whether Mercy Health properly maintains its pension plans under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  As demonstrated herein, Mercy Health fails to do so, to the detriment of its approximately 32,000 employees who deserve better.

2.  As its name implies, ERISA was crafted to protect employee retirement funds.  A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA— fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program— aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

3.  This class action is brought on behalf of all participants and beneficiaries of the defined benefit pension plans that are established, maintained, administered and/or sponsored by Mercy Health, Mercy Health's affiliates and/or by Mercy Health's committees, and operated as

or claimed to be "Church Plans" by Mercy Health, (referred to as the "Mercy Health Plans" or simply the "Plans") (the "Class").

4. Mercy Health is violating numerous provisions of ERISA— including, on information and belief, underfunding the Mercy Health Plans— while erroneously claiming that the Plans are exempt from ERISA's protections because they are "Church Plans." The Mercy Health Plans do not meet the definition of "Church Plans" under ERISA because Mercy Health plainly is not a church or a convention or association of churches and because the Mercy Health Plans were not established by a church or a convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the Mercy Health Plans are not Church Plans. *See Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 15-1368, 2016 WL 1055784, --- F.3d --- (7th Cir. Mar. 17, 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

5. Mercy Health may claim that it is permitted to establish its own Church Plans under ERISA, even though it is not a church, because it is an organization "controlled by" or "associated with" a church, within the meaning of ERISA. Even if ERISA permitted such non-church entities to establish Church Plans, which it does not, Mercy Health is not controlled by a church, as the evidence will show. Moreover, Mercy Health is not associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

6. Mercy Health is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which Mercy Health competes in its commercial healthcare activities. Mercy Health is not owned or operated by a church and does not receive funding from a church. No denominational requirement exists for Mercy Health employees. Indeed, Mercy

Health tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Mercy Health employees. In choosing to recruit and hire from the population at large, Mercy Health must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests. Moreover, Mercy Health owns and/or operates numerous healthcare facilities and health-related services including some that claim to be secular and have no relationship with any church.

7.     If Mercy Health, a non-church organization, could itself establish Church Plans, which Plaintiffs dispute, the Court would be required to evaluate many levels of evidence to determine whether Mercy Health shares common "religious bonds and convictions" with a church.

8.     Moreover, if the Court weighed all this evidence and determined that Mercy Health did share such common religious bonds and convictions with a church, or if for any other reason the Court determined that the Mercy Health Plans fell within the scope of the Church Plan exemption, the Church Plan exemption would then be, as applied to Mercy Health, an unconstitutional accommodation under the Establishment Clause of the First Amendment. Mercy Health claims, in effect, that the participants in its defined benefit pension plans must be exempted from ERISA protections, and Mercy Health must be relieved of its ERISA financial obligations, because Mercy Health claims certain religious beliefs. The Establishment Clause, however, does not allow such an economic preference for Mercy Health and burden-shifting to Mercy Health employees. Extension of the Church Plan exemption to Mercy Health would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms Mercy Health workers; (C) puts Mercy Health competitors at an economic disadvantage; (D) relieves Mercy Health of no genuine religious burden created

by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

9.　　Mercy Health's claim of Church Plan status for its defined benefit pension plans fails under both ERISA and the First Amendment.　Plaintiffs seek an Order requiring Mercy Health to comply with ERISA and afford the Class all the protections of ERISA with respect to Mercy Health's defined benefit pension plans, as well as an Order finding that the Church Plan exemption, as claimed by Mercy Health, is unconstitutional because it violates the Establishment Clause of the First Amendment.

## II.　　JURISDICTION AND VENUE

10.　　**Subject Matter Jurisdiction.**　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

11.　　**Personal Jurisdiction.**　This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process.　ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).　All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them.　The Court also has personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in Ohio as a result of Defendant Mercy Health being headquartered in, transacting business in, and/or having significant contacts with this District.

12.　　**Venue.**　Venue is proper in this district pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plans are administered in this District, (b) some or all of

the violations of ERISA took place in this District, and/or (c) Defendant Mercy Health may be found in this District.

13.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Mercy Health systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

14.     Venue is also proper in this District pursuant to Local Rule 82.1 because Mercy Health's headquarters is in Cincinnati, Ohio.

### III.     PARTIES

**A.     Plaintiffs**

15.     **Plaintiff Janet Whaley.** Plaintiff Whaley was an employee of Mercy Health or its predecessors from 1966 until July 2013.  Plaintiff Whaley is a vested participant in the St. Vincent Retirement Plan maintained by Mercy Health and she is therefore eligible for pension benefits under the Plan.  Additionally and alternatively, Plaintiff Whaley has a colorable claim to benefits under one of the pension plans maintained by Mercy Health and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Mercy Health Plans pursuant to ERISA sections 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

16.     **Plaintiff Leslie Beidleman.** Plaintiff Beidleman was an employee of Mercy Health or its predecessors from approximately 1983 until June 2013.  Plaintiff Beidleman is a vested participant in the St. Vincent Retirement Plan maintained by Mercy Health and she is therefore eligible for pension benefits under the Plan.  Additionally and alternatively, Plaintiff Beidleman has a colorable claim to benefits under one of the pension plans maintained by Mercy

Health and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Mercy Health Plans pursuant to ERISA sections 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**B.**     **Defendants**

17.     As discussed below, all the Defendants are ERISA fiduciaries.

18.     **Defendant Mercy Health.**  Defendant Mercy Health is a 501(c)(3) non-profit corporation organized under, and governed by, Ohio law with operations in Ohio and Kentucky. Mercy Health is the largest health care provider in Ohio. Together with certain of its affiliated entities, Mercy Health owns, leases, invests in or manages acute care hospitals, behavioral health facilities, long-term care and rehabilitation facilities, home health agencies, nursing registries, physician clinics, hospice facilities, nursing homes, clinical laboratories, ambulatory surgery centers, home medical equipment supply services, foundations, a captive insurance company and an accountable care organization that participates in the Medicare Shared Savings Program. Mercy Health employs approximately 32,000 people.  Defendant Mercy Health is the employer responsible for maintaining the Mercy Health Plans and is, therefore, the plan sponsor of the Mercy Health Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. §1002(16)(B).

19.     **Defendants John and Jane Does, 1-20, Members of the Mercy Health Retirement Plan Committee (the "Retirement Plan Committee Defendants").** Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the Mercy Health Retirement Plan Committee.  Upon information and belief, the members of the Retirement Plan Committee communicated with participants in the Plans and their responsibilities included fiduciary oversight of the Mercy Health Plans. These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

9

20.     **Defendants John and Jane Does 21-40.**  Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Mercy Health Plans and are fiduciaries within the meaning of ERISA.  These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

21.     John and Jane Does 1-20, members of the Mercy Health Retirement Plan Committee, and John and Jane Does 21-40, are collectively referred to herein as the ö Individual Defendants.ö

## IV.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.     The Adoption of ERISA

22.     Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year.  Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965.  *See generally* John Langbein, et al., PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010).

23.     As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways.  As to participants in traditional defined benefit pension plans, such as the Plans at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participantsø accruing benefits vest pursuant to certain defined schedules, that the administrators of the plans report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the

plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation ("PBGC"). *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, and 1322.

24. ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

**B. The Scope of the Church Plan Exemption in 1974**

25. As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and church plans. Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants. ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

26. ERISA defined a "Church Plan" as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

27. Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)). Thus, under the 1974

---

[1] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively. Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code ("IRC") is found at 26 U.S.C. § 414(e).

legislation, a pension plan that was not established and maintained by a church could not be a Church Plan.  *Id.*

### C.    The Changes to the Church Plan Exemption in 1980

28.    Church groups had two major concerns about the definition of "Church Plan" in ERISA as adopted in 1974.  The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church.  The second concern that arose in the church community after 1974 was more technical.  Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches.  This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans.  In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

29.    These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan."  Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364.  The amended definition is current law.

30.    As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA.  29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)).  As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches."  *Id.*  The phrase "associated with" is then defined in ERISA section 3(33)(C)(iv) to include only those

organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

31.     Two appellate cases have recently concluded that the statutory language in ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear— only a church can establish a church plan, that the legislative history underscores this conclusion and that any agency decisions that reach a different conclusion— private letter rulings obtained without input from plan participants— are entitled to no deference. *See Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 15-1368, 2016 WL 1055784, --- F.3d --- (7th Cir. Mar. 17, 2016); *Kaplan v. Saint Peter's Healthcare Sys*, 810 F.3d 175 (3d Cir. 2015).

32.     As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits,* or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan

13

"established" by a church or by a convention or association of churches could retain its "Church Plan" status even if the plan was "maintained by" a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits" and (2) the organization is "controlled by or associated with" the church or convention or association of churches. *Id.*

33. This church "pension board" clarification, however, has no bearing on plans that were not "established" by a church or by a convention or association of churches. Thus, a plan "established" by an organization "controlled by or associated with" a church is not a "church plan" because it was not "established" by a church or by a convention or association of churches. *See Stapleton*, 2016 WL 1055784, at *11 ("[T]he plain language of (33)(C) merely adds an alternative meaning to one of the subsection (33)(A)'s two elements— ‗maintain' element— but does not change the fact that a plan must still be established by a church."); *Kaplan*, 810 F.3d at 183 ("The plain terms of ERISA only make these exemptions available to plans established in the first instance by churches.").

34. In the alternative, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board. Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was other than the administration or funding of the plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension board: No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the

14

provision of retirement benefitsö maintains the plan.  *Compare with* ERISA § 3(33)(C)(i),

29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

35.     The requirements for Church Plan status under ERISA, both as originally adopted

in 1974 and as amended in 1980, are, as explained above, very clear.  And there is no tension

between the legislative history of the 1980 amendment and the amendment itself:  the Congress

enacted exactly what it wanted to enact.  Fundamental to the scheme, both as originally adopted

and as fine-tuned in 1980, was that neither an õaffiliateö of a church (using the 1974 language)

nor õan organization controlled by or associated withö a church (using the 1980 language) could

itself establish a Church Plan.  Its employees could be *included* in a Church Plan, but if it

sponsored its own plan, that was not a Church Plan.  With respect to õpension boards,ö the 1980

legislation simply clarified the long standing practice that churches could use their own financial

organizations to manage their Church Plans.

36.     Unfortunately, in 1983, in response to a request for a private ruling, the Internal

Revenue Service (õIRSö) issued a short General Counsel Memorandum that misunderstood the

statutory framework.  The author incorrectly relied on the õpension boardö clarification to

conclude that a non-church entity could sponsor its own Church Plan as long as the plan was

managed by some õorganizationö that was controlled by or associated with a church.  This, of

course, is not what the statute says, nor what Congress intended.  In any event, this mistake was

then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in

Department of Labor (õDOLö) determinations.  Under the relevant law, these private rulings may

only be relied upon by the parties thereto, within the narrow confines of the specific facts then

disclosed to the agencies, and are not binding on this Court in any event.  Moreover, the IRS and

DOL interpretations of the statutory framework, as expressed in these private rulings, are not

entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis. *See Stapleton*, 2016 WL 1055784, at *12 ("[T]he IRS letter rulings are not persuasive and we owe them no deference.").

## V.  MERCY HEALTH

### A.  Mercy Health's Operations

37.     The entity now known as Mercy Health was formed in 1985.  In 1997, the name was changed to Catholic Healthcare Partners. In 2010, its name was again changed to Catholic Health Partners. Finally, in 2014, Catholic Health Partners changed its name to Mercy Health. At the same time, the organization changed its logo. Mercy Health is a 501(c)(3) non-profit corporation organized under, and governed by, Ohio law, and it is headquartered in Cincinnati, Ohio.  Mercy Health is the largest health system in Ohio and also has operations in Kentucky, and it is one of the largest health systems in the United States. Mercy Health operates more than 250 health facilities, including 23 hospitals, eight senior living communities, five hospice programs and seven home health agencies.

38.     As of its 2014 fiscal year end, Mercy Health had approximately $6.1 billion in assets and annual operating revenues of approximately $4.5 billion.

39.     Mercy Health and its affiliates employ more than 32,000 people.

40.     In 2011, Mercy divested of substantially all assets of Mercy Health Partners – Northeast Market (Pennsylvania) by selling them to a for-profit healthcare corporation, Community Health Systems, for $150 million. Mercy's Northeast Market system included hospitals in Scranton, Nanticoke and Tunkhannock and a number of outpatient clinics. While these hospitals were sold to a for-profit healthcare corporation, the pension liabilities for the workers in these hospitals remained with Mercy Health.

41.     In addition to its statewide hospital network, Mercy Health has expanded to include numerous subsidiaries and/or related entities, including contracting with HealthSpan Partners, a non-profit Ohio LLC that owns and operates a health maintenance organization and is a preferred provider organization for insurance products licensed in Ohio.

42.     Mercy Health has interests in, or signature or other authority over, financial accounts in such foreign tax-havens as the Cayman Islands.  It directly or indirectly owns a captive insurance company in the Cayman Islands: CHP Insurance (SPC), Ltd.

43.     While Mercy Health has a policy of treating certain patients regardless of their ability to pay, Mercy's direct and indirect costs of charity care (the cost of free or discounted health services provided to persons who cannot afford to pay) fell from $160,989,000 in 2013 to $65,345,000 in 2014.

44.     Like other large non-profit hospital systems, Mercy Health relies upon revenue bonds to raise money. Mercy Health's Series 2015 Debt Issue was for $409 million total with $350 million of new money and $59 million refunding. Mercy Health also has significant sums invested in, among other things, fixed-income securities and equity securities.  Mercy also maintains a $519.2 million swap portfolio consisting of $269.2 million of fixed payer swaps and $250 million of constant maturity swaps.

45.     The principal purpose or function of Mercy Health is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches. Rather, according to Mercy Health's Articles of Incorporation, the purposes for which the corporation is organized are:

> [T]o engage in the delivery, and in activities that further or are in any way related to or associated with the delivery, of health, and health related services of every kind, nature and description deemed appropriate by the corporation. The corporation will carry out these activities either directly through facilities owned

or controlled by it or indirectly by assisting and supporting (financially and otherwise) other organizations engaged in such activities, whether or not such organizations are owned or controlled by it, but in no event shall the corporation engage in any activity that would be in conflict with Article Third hereof.

46.     Mercy Health holds itself out to be a healthcare corporation on its website,

available at: http://www.e-mercy.com/.



47.     The executive leadership of Mercy Health is comprised of lay people. Executive Officers of Mercy Health receive compensation in line with executive officers of other hospital systems.  For example, in 2013, the Mercy Health Chief Executive Officer received reportable compensation of $2,083,321.

48.     Mercy Health is not a church.

49.     Mercy Health is not a convention or association of churches.

50.     Mercy Health is not owned by a church.

51.     Mercy Health does not receive funding from any church.

52.     Mercy Health does not claim that any church has any liability for Mercy Health's debts or obligations.

53.     The governance of Mercy Health, including the management of Mercy Health's affairs, is vested in Mercy Health's Board of Trustees, not any church.

54.     Mercy Health specifically chooses not to impose any denominational requirement on its employees.

55.     Mercy Health has no denominational requirement for its patients and/or clients.

56.     Mercy Health is required and has elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including health and safety, Medicare and Medicaid, fraud and abuse, tax, anti-trust, environmental and labor laws, among others.

57.     In addition, Mercy Health purports to disclose, and not keep confidential, its own highly complex financial records.  Mercy Health makes public its consolidated financial statements, which describe Mercy Health's representations as to its own highly complex operations and financial affairs.  Mercy Health's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

**B.      The Mercy Health Plans**

58.     Mercy Health maintains the Mercy Health Plans.

59.     Mercy Health has the power to continue the Mercy Health Plans.

60.     Mercy Health has the power to amend the Mercy Health Plans.

61.     Mercy Health has the power to terminate the Mercy Health Plans.

62.     No church has the power to continue, amend, or terminate the Mercy Health Plans.

63.     No church has any role in the administration of the Mercy Health Plans.

64.     The Mercy Health Plans are non-contributory defined benefit pension plans that Mercy Health regards as "Church Plans;" the Plans provide retirement benefits for substantially all of Mercy Health's employees.

65.     Upon information and belief, the Mercy Health Plans are currently underfunded by at least $211 million.

**1.      The Mercy Health Plans Meet the Definition of ERISA Defined Benefit Plans**

66.     The Mercy Health Plans are plans, funds, or programs that were established or maintained by Mercy Health and which, by their express terms and surrounding circumstances, provide retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.

67.     The Mercy Health Plans meet the definition of "employee pension benefit plans" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

68.     The Mercy Health Plans do not provide for individual accounts for each participant and do not provide benefits based solely upon the amount contributed to a participants' account.  As such, the Mercy Health Plans are defined benefit plans within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not individual account plans or "defined contribution plans" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

**2.      The Defendants Meet the Definition of ERISA Fiduciaries**

**a.      Nature of Fiduciary Status**

69.     Every ERISA plan must have one or more "named fiduciaries."  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  The person named as the "administrator" in the plan

instrument is automatically a named fiduciary and, in the absence of such a designation, the plan sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

70.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under section 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent õ(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.ö ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

71.     Each of the Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and their participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plansø documents and/or through their conduct.

72.     As fiduciaries, Defendants were required by ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans and the Plansø investments solely in the interest of the Plansø participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

73.     Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plansø management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or

exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

74.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA section 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the plan sponsor.

**b.     Defendants Are Each ERISA Fiduciaries**

75.     **Defendant Mercy Health.**  Mercy Health is the employer responsible for maintaining the Mercy Health Plans and is, therefore, the plan sponsor of the Mercy Health Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).  Upon information and belief, at all relevant times, the terms of the instrument or instruments under which the Mercy Health Plans are operated do not specifically designate any person as a Plan Administrator sufficient to meet the requirements of ERISA section 402, 29 U.S.C. §1102. In the absence of a Plan Administrator specifically designated in or pursuant to any instrument governing the Plans, the Plan Sponsor of the Mercy Health Plans under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002 (16)(A)(ii), is the Plan Administrator.

76.     As Mercy Health is and has been the Plan Sponsor of the Mercy Health Plans, Defendant Mercy Health was also the Plan Administrator of the Plans within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).  As such, Defendant Mercy Health also is and has been a fiduciary with respect to the Plans within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the Plans.

77.     Upon information and belief, Defendant Mercy Health's responsibilities include fiduciary oversight of the Mercy Health Plans.  Upon information and belief, Defendant Mercy

Health, by and through its board of trustees, had the responsibility to appoint, and hence to monitor and remove, the members of the Mercy Health Retirement Plan Committee and other fiduciaries of the Plans.

78.     Defendant Mercy Health is a fiduciary with respect to the Mercy Health Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Mercy Health Plans, exercises authority and control respecting management or disposition of the Mercy Health Plans' assets, and/or has discretionary authority or discretionary responsibility in the administration of the Mercy Health Plans.

79.     **Retirement Plan Committee Defendants:  John and Jane Does 1-20.**  The Retirement Plan Committee Defendants (John and Jane Does 1-20) are, on information and belief, authorized to act with respect to compensation and benefits matters at Mercy Health. Upon information and belief, the responsibilities of the Retirement Plan Committee Defendants include fiduciary oversight of the Mercy Health Plans.

80.     **John and Jane Does 21-40.** John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Mercy Health Plans.

81.     The Retirement Plan Committee Defendants (John and Jane Does 1-20), and John and Jane Does 21-40 are fiduciaries with respect to the Mercy Health Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Mercy Health Plans, exercise authority and control respecting management or disposition of the Mercy Health Plans' assets,

and/or have discretionary authority or discretionary responsibility in the administration of the Mercy Health Plans.

82.     Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants once they have had the opportunity to conduct discovery on these issues.

83.     Although Mercy Health maintains that the Mercy Health Plans are exempt from ERISA coverage as Church Plans, at the same time, Mercy Health claims ERISA status for certain of its other defined benefit plans, including the Retirement Income Plan for Employees of Warren General Hospital, the Tyler Memorial Hospital Pension Plan, and the Community Hospital Retirement Plan.

84.     Compliance with ERISA thus creates no undue, genuine burden on any religious practice of Mercy Health, as evidenced by Mercy Health's claimed compliance with ERISA for its other defined benefit plans.

**3.     The Mercy Health Plans Are Not Church Plans**

85.     Mercy Health claims that the Mercy Health Plans are Church Plans under ERISA section 3(33), 29 U.S.C. § 1002(33), and the analogous section of the IRC, and therefore exempt from ERISA's coverage under ERISA section 4(b)(2), 29 U.S.C. § 1003(b)(2).

> **a.     Only Two Types of Plans May Qualify as Church Plans and the Mercy Health Plans are Neither**

86.     Under section 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the

administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be õestablishedö by a church or by a convention or association of churches in order to qualify as õChurch Plans.ö

87.     Although other portions of ERISA section 3(33)(C) address, among other matters, who can be *participants* in Church Plansô in other words, which employees can be in Church Plans, etc.ô these other portions of ERISA section 3(33)(C) do not add any other type of *plan* that can be a Church Plan.  29 U.S.C. § 1002(33)(C).  The only two types of plans that can qualify as Church Plans are those described in ERISA section 3(33)(A) and in section 3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) and (C)(i).  The Mercy Health Plans do not qualify as Church Plans under either ERISA section 3(33)(A) or (C)(i), 29 U.S.C. §§ 3(33)(A) or (C)(i).

88.     First, under ERISA section 3(33)(A), õ[t]he term õchurch planö means a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26.ö  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  A straightforward reading of this section is that a church plan õmeans,ö and therefore by definition, *must be* õa plan established . . . by a church or convention or association of churches.ö

89.     The Mercy Health Plans at issue here are not Church Plans as defined in ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), because the Mercy Health Plans were established, maintained, administered and/or sponsored by Mercy Health for its own, or its affiliatesø own, employees.  Because neither Mercy Health nor its affiliates are a church or a convention or association of churches, nor do they claim to be, the Mercy Health Plans were not õestablished and maintained byö a church or by a convention or association of churches and were not

maintained for employees of any church or convention or association of churches.  That is the end of the inquiry under ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).

90.     Second, under ERISA section 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches."  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

91.     The Mercy Health Plans are not Church Plans as defined in ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Mercy Health Plans were not "established" by a church or by a convention or association of churches.  The Mercy Health Plans also do not qualify as "Church Plans" under section 3(33)(C)(i) because they are not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both.  This ends any argument that the Mercy Health Plans could be Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

92.     In the alternative, to the extent that Mercy Health claims that the Mercy Health Plans qualify as "Church Plans" under section 3(33)(C)(i) because they are "maintained" by an entity within Mercy Health, other than Mercy Health, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the Mercy Health Plans, which includes the power to continue and/or terminate the Plans, is Mercy Health. The

claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church.  This ends any argument that the Mercy Health Plans could be Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because they are maintained by an entity other than Mercy Health.

93.     However, even if the Mercy Health Plans had been "established" by a church and even if the principal purpose or function of Mercy Health was the administration or funding of the Mercy Health Plans (instead of running a hospital conglomerate), the Mercy Health Plans still would not qualify as Church Plans under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plans is not to provide retirement or welfare benefits *to employees of a church or convention or association of churches*.  For example, the thousands of participants in the Mercy Health Plans work for Mercy Health, a non-profit hospital conglomerate.  Mercy Health is not a church or convention or association of churches and its employees are not employees of a church or convention or association of churches within the meaning of ERISA.

94.     Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax exempt organization that is controlled by or associated with a church or a convention or association of churches also may be considered an employee of a church.  But this part of the definition merely explains which employees a church plan may cover *once a valid church plan is established*.  The Mercy Health Plans also fail this part of the definition, because Mercy Health is not controlled by or associated with a church or convention or association of churches within the meaning of ERISA.

95.    Mercy Health is a non-profit corporation under Ohio law.

96.    Mercy Health is governed by its board of trustees.

97.    Mercy Health's board of trustees must act in the best interests of Mercy Health at all times, this includes avoiding conflicts of interest, and also avoiding situations that create a reasonable appearance of a conflict of interest.

98.    Mercy Health's board of trustees owes fiduciary duties to the non-profit corporation.

99.    Mercy Health is not controlled by a church or convention or association of churches.

100.    Mercy Health is not operated by a church.

101.    In addition, Mercy Health is not "associated with" a church or convention or association of churches within the meaning of ERISA.  Under ERISA section 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches."  Mercy Health does not share common religious bonds and convictions with a church or association of churches.

102.    For example, Mercy Health tells prospective employees that religious affiliation is not a factor in the recruiting and hiring of Mercy Health employees.  In choosing to recruit and hire from the population at large, Mercy Health must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

103.    In addition, Mercy Health has a practice of partnering and affiliating with hospitals that claim no religious affiliation, including community hospitals such as Community

Mercy Health Partners in Springfield, Ohio, and Allen Medical Center in Oberlin, Ohio.  In choosing to compete in the commercial arena of healthcare services and to embark upon a business plan that includes healthcare facilities with no claimed ties to any particular religion, or to religion generally, Mercy Health must be willing to accept neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

104.    Mercy Health provides non-denominational chapels and encourages its clients to seek the faith of their own choosing.

105.    The Mercy Health Plans further fail to satisfy the requirements of ERISA section 3(33)(C)(i) because this section requires the organization that maintains the Plans to be "controlled by or associated with" a church or convention or association of churches within the meaning of ERISA.  29 U.S.C. § 1002(33)(C)(i).  Thus, even if (1) a church had "established" the Mercy Health Plans (which it did not), (2) the principal purpose or function of Mercy Health was the administration or funding of the Mercy Health Plans (instead of running a hospital conglomerate), and (3) Mercy Health's employees were employees of a church or convention or association of churches (which they are not), the Mercy Health Plans still would not qualify as Church Plans under ERISA section 3(33)(C)(i) because— for the reasons outlined above— Mercy Health is *not controlled by or associated with* a church or convention or association of churches within the meaning of ERISA.  *See* 29 U.S.C. § 1002(33)(C)(i), (iv).

106.    Finally, even if Mercy Health were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA section 3(33)(C)(ii)(2), and even if the Mercy Health Plans were "maintained by" either a church or a "pension board" satisfying the requirements of ERISA section 3(33)(C)(i), the Mercy Health Plans still would not be "Church Plans" because all "Church Plans" must be "established" by a

church or by a convention or association of churches. 29 U.S.C. §§ 1002(33)(A), (C)(i). Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," see ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization. Accordingly, because no church established the Mercy Health Plans, the Plans cannot be "Church Plans" within the meaning of ERISA.

> **b.** **Even if the Mercy Health Plans Could Otherwise Qualify as Church Plans under ERISA §§ 3(33)(A) or (C)(i), they are Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)**

107.    Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches. In this case, there are approximately 32,000 participants in the Mercy Health Plans, and very nearly all of them are non-clergy healthcare workers.

108.    If the approximately 32,000 participants in the Mercy Health Plans do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Mercy Health Plans could otherwise qualify as Church Plans under ERISA sections 3(33)(A) or (C)(i), they still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

109.    As set forth above, Mercy Health is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches, within the meaning of ERISA section 3(33)(C)(iv).

      **c.    Even if the Mercy Health Plans Could Otherwise Qualify as Church Plans under ERISA, the Church Plan Exemption, as Claimed By Mercy Health, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

110.    The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

111.    The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (*e.g.,* exempts them from neutral regulations) at the expense of nonadherents and/or while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to Mercy Health, a non-church entity, privileges Mercy Health for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections. Similarly, Mercy Health, a non-church entity, has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on Mercy Health's claimed religious beliefs. This too is prohibited by the Establishment Clause. Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g., Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n.8 (1989) (plurality opinion).

112.    As set forth in more detail below in Count IX, the extension of the Church Plan accommodation to Mercy Health, which is not a church, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms Mercy Health workers, puts Mercy Health competitors at an economic disadvantage, relieves Mercy Health of no genuine religious burden created by ERISA, and creates more government entanglement with

alleged religious beliefs than compliance with ERISA creates.  Accordingly, the Church Plan exemption, as claimed by Mercy Health, is void and ineffective.

## VI.    CLASS ALLEGATIONS

113.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated:  all participants or beneficiaries of the defined benefit plans that are established, maintained, administered and/or sponsored by Mercy Health, Mercy Health's affiliates and/or by Mercy Health's committees, and operated as or claimed to be, "Church Plans."

114.    Excluded from the Class are any high-level executives at Mercy Health or any employees who have responsibility or involvement in the administration of the Plans, or who are subsequently determined to be fiduciaries of the Mercy Health Plans, including the Individual Defendants.

### A.    Numerosity

115.    The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Mercy Health.  Mercy Health currently employs approximately 32,000 individuals.  Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

### B.    Commonality

116.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and failed to enforce the funding obligations of the Plans in accordance with ERISA.

117.     The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plans are ERISA covered plans; (2) an order requiring that the Plans comply with the administration and enforce the funding obligations of the Plans in accordance with ERISA; and (3) an order requiring Mercy Health to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

## C.     Typicality

118.     Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plans in accordance with ERISA.  Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

119.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Mercy Health Plans are not Church Plans; and (ii) a declaration that the Mercy Health Plans are ERISA covered plans that must comply with the administration and funding requirements of ERISA.  In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

120.     Mercy Health does not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

## D.     Adequacy

121.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

122.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

123.    Defendant Mercy Health and the Individual Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

124.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.    Rule 23(b)(1) Requirements**

125.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

126.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.    Rule 23(b)(2) Requirements**

127.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.    Rule 23(b)(3) Requirements**

128.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA,

and (3) whether the Church Plan exemption, as claimed by Mercy Health, violates the Establishment Clause of the First Amendment. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A. Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plans or affect each class member equally;

B. Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C. This litigation is properly concentrated in this forum, which is where Defendant Mercy Health is headquartered; and

D. There are no difficulties managing this case as a class action.

## VII. CAUSES OF ACTION

### COUNT I
**(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against All Defendants)**

129. Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

130. ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain õappropriate equitable relief ... to enforce any provisions of this title.ö Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Mercy Health Plans are not Church Plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus are subject to the provisions of Title I and Title IV of ERISA.

131.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action õ(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.ö  Pursuant to these provisions, Plaintiffs seek orders directing the Mercy Health Plansø sponsor and administrator to bring the Mercy Health Plans into compliance with ERISA.

132.    ERISA section 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary õwho breaches any of the responsibilities, obligations, or duties imposed upon fiduciariesö and the fiduciary õshall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.ö  Because the operation of the Plans as non-ERISA plans was a breach of Defendantsø fiduciary duties, the Defendants breached their fiduciary duties and Plaintiffs also seek Plan-wide equitable and remedial relief under ERISA section 502(a)(2).

133.    As the Mercy Health Plans are not Church Plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and meet the definition of pension plans under ERISA section 3(2), 29 U.S.C. § 1002(2), the Mercy Health Plans should be declared to be ERISA-covered pension plans, and the Mercy Health Plansø sponsor and administrator should be ordered to bring the Mercy Health Plans into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II
### (Claim for Violation of Reporting and Disclosure Provisions Against Defendant Mercy Health)

134.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

### 1.    Summary Plan Descriptions

135.    At no time has Mercy Health provided Plaintiffs or any member of the Class with Summary Plan Descriptions with respect to the Mercy Health Plans that meet the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

136.    Because Mercy Health has been the Plan Administrator of the Plans at all relevant times, it violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

### 2.    Annual Reports

137.    At no time has Mercy Health filed an annual report with respect to the Mercy Health Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA section 103, 29 U.S.C. § 1023.

138.    Because Mercy Health has been the Plan Administrator of the Mercy Health Plans at all relevant times, Mercy Health has violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Mercy Health Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

### 3.    Summary Annual Reports

139.    At no time has Mercy Health furnished Plaintiffs or any member of the Class with Summary Annual Reports with respect to the Mercy Health Plans in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

140.    Because Mercy Health has been the Plan Administrator of the Mercy Health Plans at all relevant times, Mercy Health has violated ERISA section 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with Summary Annual Reports with respect to the Mercy Health Plans in compliance with ERISA section 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

### 4.    Notification of Failure to Meet Minimum Funding

141.    At no time has Mercy Health furnished Plaintiffs or any member of the Class with Notices with respect to the Mercy Health Plans pursuant to ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Mercy Health had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the Mercy Health Plans.

142.    Defendant Mercy Health is the employer that established and/or maintains the Mercy Health Plans.

143.    At no time has Defendant Mercy Health funded the Mercy Health Plans in accordance with ERISA section 302, 29 U.S.C. § 1082.

144.    As the employer maintaining the Mercy Health Plans, Defendant Mercy Health has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Mercy Health Plans. Mercy Health is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant has

failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

### 5.    Funding Notices

145.    At no time has Mercy Health furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Mercy Health Plans pursuant to ERISA section 101(f), 29 U.S.C. § 1021(f).

146.    Because Mercy Health has been the Plan Administrator of the Mercy Health Plans at all relevant times, it has violated ERISA section 101(f) by failing to provide each participant and beneficiary of the Mercy Health Plans with the Funding Notice required by ERISA section 101(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(f), 29 U.S.C. § 1021(f).

### 6.    Pension Benefit Statements

147.    At no time has Mercy Health furnished Plaintiffs or any member of the Class with a Pension Benefit Statement with respect to the Mercy Health Plans pursuant to ERISA section 105(a)(1), 29 U.S.C. § 1025(a)(1).

148.    Because Mercy Health has been the Plan Administrator of the Mercy Health Plans at all relevant times, it has violated ERISA section 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant has failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

## COUNT III
### (Claim for Failure to Provide Minimum Funding Against Defendant Mercy Health)

149.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

150.    ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

151.    Mercy Health was responsible for making the contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

152.    At all relevant times, Mercy Health has failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

153.    By failing to make the required contributions to the Mercy Health Plans, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA section 302, Defendant Mercy Health has violated ERISA section 302, 29 U.S.C. § 1082.

## COUNT IV
### (Claim for Failure to Establish the Plans Pursuant to Written Instruments Meeting the Requirements of ERISA § 402 Against Defendant Mercy Health)

154.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

155.    ERISA section 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, õfor one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the planö and will õprovide a procedure for establishing and carrying out a

funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA].ö

156.    Upon information and belief, although the benefits provided by the Mercy Health Plans were described to the employees and retirees of Mercy Health (and/or its affiliates and subsidiaries) in various written communications, the Mercy Health Plans have never been established pursuant to written instruments meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

157.    Defendant Mercy Health violated section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the Mercy Health Plansø operations and administration.  29 U.S.C. § 1102.

### COUNT V
### (Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant Mercy Health)

158.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

159.    ERISA section 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

160.    Although the Mercy Health Plansøassets have been held in trust, the trust does not meet the requirements of ERISA section 403, 29 U.S.C. § 1103.

161.    Defendant Mercy Health violated section 403 by failing to put the Mercy Health Plansøassets in trust in compliance with ERISA section 403, 29 U.S.C. § 1103.

## COUNT VI

### (Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant Mercy Health)

162.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

163.    ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to öclarify his rights to future benefits under the terms of the plan.ö

164.    Plaintiffs and members of the class have not been provided ERISA-compliant benefit statements.

165.    Pursuant to ERISA sections 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plans are made compliant with ERISA, Plaintiffs seek to clarify their rights under the terms of the Plans and to require Defendant Mercy Health to provide Plaintiffs and the Class with ERISA-compliant benefit statements.

## COUNT VII

### (Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant Mercy Health)

166.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

167.    ERISA section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA section 502(c), 29 U.S.C. § 1132(c).

168.    ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice

requirement of ERISA section 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

169.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA section 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

170.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA section 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

171.     Because Defendant Mercy Health, as the employer, has failed to give the notices required by ERISA section 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart D, Defendant Mercy Health is liable to Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

172.     Because Mercy Health, as Plan Administrator of the Plans, has failed to give the notices required by ERISA section 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statements required by ERISA section 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts E through F, Mercy Health is liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statements are provided, as the Court, in its discretion, may order.

## COUNT VIII

### (Claim for Breach of Fiduciary Duty Against All Defendants)

173.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

174.    Plaintiffs bring this Count VIII for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

### 1.    Breach of the Duty of Prudence and Loyalty

175.    This sub-Count alleges fiduciary breach against all Defendants.

176.    ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ó

a)    for the exclusive purpose of:

(i)    providing benefits to participants and beneficiaries; and

(ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

177.    As fiduciaries with respect to the Mercy Health Plans, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA sections 404(a)(1)(A)-(D),

44

29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Mercy Health Plans during the times that each was a fiduciary of the Mercy Health Plans.

178. Defendants have never enforced any of the provisions of ERISA set forth in Counts I-V with respect to the Mercy Health Plans.

179. By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiffs and the Class.

180. The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Mercy Health Plans equal to the foregone funding and earnings thereon, and has profited Defendant Mercy Health by providing it the use of the money owed to the Mercy Health Plans for its general business purposes.

### 2. Prohibited Transactions

181. This sub-Count alleges violations on behalf of all Defendants.

182. ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

183. ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

184. ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

185.     As fiduciaries with respect to the Plans and, with respect to Mercy Health, as an employer of employees covered by the Plans, the Defendants at all relevant times were parties in interest with respect to the Mercy Health Plans pursuant to ERISA sections 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

186.     By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants extended credit from the Mercy Health Plans to Mercy Health in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

187.     By failing to enforce the funding obligations created by ERISA and owed to the Mercy Health Plans, Defendants used the Mercy Health Plans' assets for Mercy Health's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Mercy Health Plans' assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

188.     By failing to enforce the funding obligations created by ERISA and owed to the Mercy Health Plans, Defendants used the Mercy Health Plans' assets in Mercy Health's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1).

189.     The failure of Defendants to enforce the funding obligations owed to the Mercy Health Plans has resulted in a loss to the Mercy Health Plans equal to the foregone funding and earnings thereon.

190.     The failure of Defendants to enforce the funding obligations owed to the Mercy Health Plans has profited Defendant Mercy Health by providing it the use of money owed to the Mercy Health Plans for its general business purposes.

**3.     Failure to Monitor Fiduciaries**

191.     This sub-Count alleges fiduciary breach against Defendant Mercy Health.

46

192.    As alleged above, during the Class Period, Defendant Mercy Health was a named fiduciary pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA section  3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

193.    The scope of the fiduciary responsibilities of Mercy Health included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

194.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

195.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

196.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

197.    Defendant Mercy Health breached its fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plans as ERISA plans; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plans as ERISA Plans; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plans as a non-ERISA Plans, and who breached their fiduciary duties under ERISA.

198.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Mercy Health Plans equal to the foregone funding and earnings thereon, and profited Defendant Mercy Health by providing it the use of money owed to the Mercy Health Plans for its general business purposes.

### 4.    Co-Fiduciary Liability

199.    This sub-Count alleges co-fiduciary liability against all Defendants.

200.    As alleged above, all Defendants were named fiduciaries pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

201.    ERISA section 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

202.    **Knowledge of a Breach and Failure to Remedy.**  ERISA section 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

203.    Because Defendants knew that the Plans were not being run as ERISA Plans, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA.  Yet, they failed to undertake any effort to remedy these breaches.

204.    **Knowing Participation in a Breach.**  ERISA section 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  Mercy Health knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plans not being run as ERISA Plans.

205.    **Enabling a Breach.**  ERISA section 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA section 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

206.    The failure of Defendant Mercy Health to monitor the Individual Defendants enabled those Individual Defendants to breach their duties.

207.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans are currently underfunded, meaning that the Plans do not have sufficient assets to pay

all accrued benefits they have promised to their participants and beneficiaries and are legally obligated to pay under ERISA.

208.     The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Mercy Health Plans equal to the foregone funding and earnings thereon, and profited Defendant Mercy Health by providing it the use of money owed to the Mercy Health Plans for its general business purposes.

### COUNT IX
**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

209.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

210.     The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

211.     The ERISA Church Plan exemption, as claimed by Mercy Health, is an attempt to extend the accommodation beyond churches and associations of churches, to Mercy Health— a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace.  Extension of the Church Plan exemption to Mercy Health violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms Mercy Health workers, (C) puts Mercy Health competitors at an economic disadvantage, (D) relieves Mercy Health of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

      A.     **Not Necessary to Further Stated Purpose.**  Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of

the confidential relationship with regard to churches and their religious activities.ö[2]  This purpose has no application to Mercy Health, which is neither run by nor intimately connected to any church financially.  And, unlike a church, Mercy Health has *no confidential books and records* to shield from government scrutiny.  Mercy Health already purports to disclose all material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

      B.    **Harms Workers.**  Employers, including Mercy Health, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market.  Mercy Health tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Mercy Health employees.  Thus, as a practical matter, and by Mercy Healthøs own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith.  In choosing to recruit and hire from the public at large, Mercy Health must be willing to accept neutral regulations, such as ERISA, imposed to protect those employeesø legitimate interests.  To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests.  The Church Plan exemption, as claimed by Mercy Health, places its tens of thousands of longtime employeesø justified reliance on their pension benefits at great risk, including because the Plans are uninsured and, upon information and belief, underfunded.  In addition, Mercy Health fails to provide the multitude of other ERISA protections designed to safeguard its

---

[2] S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

employees' pensions. The Church Plan exemption, as claimed by Mercy Health, provides no consideration of the harm that it causes to Mercy Health's employees.

      **C.**    **Puts Mercy Health's Competitors at an Economic Disadvantage.**

Mercy Health's commercial rivals face material disadvantages in their competition with Mercy Health because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections. In claiming that the Mercy Health Plans are exempt Church Plans, Mercy Health enjoys a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the Mercy Health Plans, to its competitive growth strategy. To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of harm to nonbeneficiaries. The Church Plan exemption, as applied by Mercy Health, provides no consideration of the disadvantage it creates for Mercy Health's competitors.

      **D.**    **Relieves No Genuine Religious Burden Imposed by ERISA.** An exemption exclusively for religion must alleviate a significant, *state-imposed* interference with religious exercise. The Church Plan exemption, as claimed by Mercy Health, responds to no genuine burden created by ERISA on any of Mercy Health's religious practices. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities. Moreover, Mercy Health maintains multiple separate ERISA-governed plans, which further evidences that ERISA creates no undue burden on any genuine religious practice of Mercy Health.

E.    **Creates Government Entanglement with Alleged Religious Beliefs.**  A Mercy Health exemption requires courts and agencies to examine unilateral religious õconvictionsö of a non-church entity and determine if they are õsharedö with a church, in the absence of any actual church claiming responsibility for the pensions.  This *creates* entanglement between government and putative religious beliefs.  ERISA compliance, on the other hand, requires zero entanglement with religion for Mercy Health because ERISA is a neutral statute that regulates pension protections and Mercy Health has no relevant confidential books, records or relationships.  Thus, an extension of the Church Plan exemption to Mercy Health produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

212.    Plaintiffs seek a declaration by the Court that the Church Plan exemption, as claimed by Mercy Health, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following relief:

A.    Declaring that the Mercy Health Plans are employee pension benefit plans within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), are defined benefit pension plans within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not Church Plans within the definition of ERISA section 3(33), 29 U.S.C. § 1002(33).

B.    Ordering Mercy Health to reform the Mercy Health Plans to bring them into compliance with ERISA and to have the Mercy Health Plans comply with ERISA, including as follows:

1.     Revising the Plans' documents to reflect that the Plans are defined benefit plans regulated by ERISA;

2.     Requiring Mercy Health to fund the Mercy Health Plans in accordance with ERISA's funding requirements, disclose required information to the Mercy Health Plans' participants, and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85;

3.     Reforming the Mercy Health Plans to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity;

4.     Requiring the adoption of instruments governing the Mercy Health Plans that comply with ERISA section 402, 29 U.S.C. § 1102;

5.     Requiring Mercy Health to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant Participant Benefit Statements, and providing Notices of the Mercy Health Plans' funding status and deficiencies;

6.     Requiring clarification of rights to future benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B);

7.     Requiring the establishment of a trust in compliance with ERISA section 403, 29 U.S.C. § 1103;

8.      Requiring Defendants, as fiduciaries of the Plans, to make the Mercy Health Plans whole for any losses and disgorge any profits Mercy Health accumulated as a result of fiduciary breaches;

9.      Appointing an Independent Fiduciary to hold the Mercy Health Plans' assets in trust, to manage and administer the Mercy Health Plans and their assets, and to enforce the terms of ERISA;

10.     Requiring Mercy Health to pay civil money penalties of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to properly fund the Plans;

11.     Requiring Mercy Health to pay civil money penalties of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice; and

12.     Requiring Mercy Health to pay civil money penalties of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide a benefit statement under ERISA section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

C.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Mercy Health Plans;

D.      Declaring, with respect to Count IX, that the Church Plan exemption, as claimed by Mercy Health, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective;

E.      Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine;

F.     Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law;

G.     Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law; and

H.     Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED this 3rd day of May, 2016.

**GARY, NAEGELE & THEADO, LLC**

*/s/ Thomas R. Theado*
Thomas R. Theado (Ohio S.Ct. No. 0013937)
TTheado@GNTLaw.com
401 Broadway Avenue, Unit 104
Lorain, Ohio  44052-1745
Tel.: (440) 244-4809
Fax: (440) 244-3462

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Laura R. Gerber
lgerber@kellerrohrback.com
Havila Unrein
hunrein@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

**KELLER ROHRBACK L.L.P.**
Ron Kilgard
rkilgard@kellerrohrback.com
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
Fax: (602) 248-2822

**COHEN MILSTEIN SELLERS**
  **& TOLL, PLLC**
Karen L. Handorf
khandorf@cohenmilstein.com
Michelle Yau
myau@cohenmilstein.com
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for Plaintiffs*